**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JADE BASTIAN, *Plaintiff*, v. NATIONAL MULTIPLE SCLEROSIS SOCIETY, *Defendant*. | No. 24-cv-02757 (DLF) |

**MEMORANDUM OPINION**

Jade Bastian, proceeding *pro se*, brings this action against the National Multiple Sclerosis Society under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981. Am. Compl., Dkt. 16. Before the Court is the Society's Motion to Dismiss the Amended Complaint. Mot. to Dismiss Am. Compl., Dkt. 19. For the reasons that follow, the Court will grant the motion and dismiss Bastian's claims without prejudice.

## I.    BACKGROUND

Bastian is a "Black female of Caribbean descent," Am. Compl. ¶ 7, who was employed by the National Multiple Sclerosis Society from August 2022 until July 24, 2023, *see* Pl.'s Exs. 9, Dkt. 16-1. She alleges that, during her employment, the Society "subjected [her] to a pattern of discrimination" due to her race, gender, and national origin. Am. Compl. ¶ 8. For example, she asserts that "Jason Noll, a white male volunteer, harassed [her] by threatening her with a forklift, attempting to contaminate her drink while infected with COVID 19, and regularly making derogatory comments toward [her]." *Id.* ¶ 9. Although Bastian complained about Noll to her managers, they failed to take sufficient action. *See id.*; Pl.'s Exs. 29–34. In particular, she  was

informed that "[t]here [wa]s no option to never cross paths [with Noll] again," and told that those involved would "need to figure out how to move forward." Pl.'s Exs. 23–24.

Bastian also alleges that she "endured a series of discriminatory and derogatory comments tied to her protected classes." Am. Compl. ¶ 18. She notes that Noll told her that her "skirt [wa]s too short for th[e] job" and once told her that she "d[idn't] know any better" because she was "not from here." *Id.* She further states that two Society employees—Christina Taranto and Claire Lorio—asked her whether she had a "sugar daddy" and that another employee—Vincent Fiduccia—mocked her accent, saying "[t]his is not the way we speak in this country." *Id.* And she alleges that her supervisor, Catherine Lott, "harassed" her when she used her personal vehicle for site visits. Pl.'s Exs. 16–17.

According to Bastian, the working conditions at the Society were also unsafe. *See* Am. Compl. ¶¶ 9–15. She was once "instructed to take responsibility for a rental car" for work, "despite not completing NMSS driver training." *Id.* ¶ 9. At other times, she was tasked with "heavy and dangerous tasks such as driving trucks, working late hours alone, and handling physically demanding setup and breakdown operations." *Id.* ¶ 15. And, on May 7, 2023, she was assaulted by a 7-Eleven employee while buying ice for a Society event. *See id.* ¶¶ 10–12. Bastian did not report the assault, fearing that the Society would retaliate against her. *See id.* ¶¶ 13–14. She did, however, report other unsafe work conditions. *Id.* ¶ 15.

On May 2, 2023, Bastian was placed on a Performance Improvement Plan (PIP). Pl.'s Exs. 46–50; *see* Am. Compl. ¶ 16. The PIP "formally clarif[ied] expectations" regarding Bastian's role and identified "key areas" to address, including the "accuracy of [her] work leading into event weekends and during event weekend[s]," "engagement in event planning and execution meetings," and "leadership and accountability." Pl.'s Exs. 46.

Bastian was ultimately terminated on July 25, 2023. *Id.* at 63. Her termination letter stated that her dismissal was due to "[i]ndividual performance." *Id.* When she subsequently applied for and was approved to receive employment benefits, her determination letter stated that the District of Columbia claims examiner "determined that the employer failed to provide evidence that [she] failed to successfully perform [her] job duties." *Id.* at 65. Bastian alleges that, although she began looking for other work, Society employees provided "negative and misleading references to prospective employers," causing her to lose job opportunities. Am. Compl. ¶ 21. She has now been unemployed for over 18 months, "[d]espite actively seeking employment by applying for numerous positions." *See id.* ¶ 22.

On December 27, 2023, Bastian filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Pl.'s Exs. 9–10. Her charge alleged that Noll "harassed" and "threatened" her; that she "experienced several incidents of color and national origin harassment including but not limited to co-workers correcting [her] and talking about [her] accent"; that she "reported the color and national origin harassment to Human Resources" in September 2022 and April 2023; and that she was placed on a PIP in April 2023 before she was ultimately terminated in July 2023. *Id.* at 9. In the portion of the form reading "DISCRIMINATION BASED ON," Bastian wrote "Color, National Origin, Retaliation." *Id.* On June 30, 2024, the EEOC issued Bastian a determination and right to sue letter stating that it would "not proceed further with its investigation" but had made "no determination about whether further investigation would establish violations." *Id.* at 11.

On August 15, 2024, Bastian filed a complaint in D.C. Superior Court alleging "discrimination of color and race," "continued harassment," and "retaliation." Compl. 1, Dkt. 1-1. The Society removed the case to this Court, *see* Notice of Removal, Dkt. 1, and moved to

dismiss for insufficient service of process and failure to state a claim, *see* Mot. to Dismiss 1, Dkt. 7.  The Court granted the Society's motion on December 13, 2024, and directed Bastian to file an amended complaint on or before January 20, 2025.  December 13, 2024 Minute Order.

Bastian filed the operative complaint on January 16, 2025.  *See* Am. Compl.  She alleges (1) discrimination on the basis of race, gender, and national origin in violation of Title VII; (2) retaliation in violation of Title VII; (3) a hostile work environment in violation of Title VII; and (4) discrimination and retaliation in violation of 42 U.S.C. § 1981.  *See id.* ¶¶ 1–2, 9, 23–25. The Society now moves to dismiss.

## II.     LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While this standard does not amount to a specific probability requirement, it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). A complaint need not contain "detailed factual allegations," but "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified).

Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the Court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all

inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).  The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (citation modified).  And an "unadorned, the-defendant-unlawfully-harmed-me accusation" is not credited.  *Id.*  Likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  And while the Court construes *pro se* complaints "liberally," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), even a *pro se* complaint must "plead factual matter that permits the court to infer more than the mere possibility of misconduct," *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (citation modified).

Finally, in deciding a motion to dismiss a *pro se* plaintiff's complaint, the Court must consider the plaintiff's complaint "in light of all filings."  *Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (citation modified).

## III.   ANALYSIS

The Court will dismiss Bastian's discrimination, retaliation, hostile work environment, and § 1981 claims for failure to state a claim.  The Court will address each in turn.

### A.   Title VII Discrimination Claims

#### 1.   *Gender Discrimination Claim*

An employee bringing claims under Title VII must exhaust administrative remedies before filing suit in federal district court.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995). The employee does so by filing her claims with the EEOC.  *See id.*; 42 U.S.C. § 2000e-5.

The exhaustion requirement limits the scope of an employee's complaint in federal court "to claims that are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Park*, 71 F.3d at 907 (citation modified).  A claim is "reasonably related"

5

to an EEOC charge if, "[a]t a minimum," the claim would "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 526–27 (D.C. Cir. 2019) (citation modified). Generally, a Title VII plaintiff "must timely exhaust administrative remedies *for each discrete act alleged*, even if the acts are related." *Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (citation modified). The exhaustion requirement, "though mandatory, is not jurisdictional." *Douglas v. Donovan*, 559 F. 3d 549, 556 n.4 (D.C. Cir. 2009). As such, failure to exhaust is analyzed under Rule 12(b)(6). *Poole v. U.S. Gov't Publ'g Off.*, 258 F. Supp. 3d 193, 199 (D.D.C. 2017).

Bastian has failed to exhaust her gender discrimination claim. The narrative portion of her EEOC charge of discrimination did not mention gender. She simply stated that she "experienced several incidents of color and national origin harassment" and "reported the color and national origin harassment to Human Resources." Pl.'s Exs. 9. Nor did she list gender when filling out the portion of the form asking the specific type(s) of discrimination on which her charge was based. *See id.* (listing "Color, National Origin, Retaliation"). Because Bastian's gender discrimination claim is not "reasonably related" to the race and national origin discrimination claims set forth in her charge of discrimination, she has failed to exhaust her gender discrimination claim. *See Park*, 71 F.3d at 907 ("A court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process."); *cf. Haynes*, 924 F.3d at 526–29 (plaintiff failed to exhaust race and age discrimination claims where his charge described discrimination based only on disability). Thus, the Court will dismiss Bastian's gender discrimination claim for failure to state a claim.

2.    *Race and National Origin Discrimination Claims*

Although Bastian has exhausted her claims for discrimination on the basis of race and national origin, she nonetheless has failed to state a claim as to either.

To state a discrimination claim under Title VII, a plaintiff must plausibly allege that (1) she "suffered an adverse employment action" (2) because of her "race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). In the absence of "direct evidence of discrimination"—for example, a statement that *itself* shows impermissible bias, *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)—a discrimination claim is analyzed under the *McDonnell Douglas* framework, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff has the burden of first establishing a prima facie case of discrimination by showing that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citation modified). If "the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action in question." *Id.* (citation modified). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citation modified); *see McDonnell Douglas Corp.*, 411 U.S. at 804–05.

At the motion to dismiss stage, a plaintiff need not plead facts supporting every element of a prima facie case or anticipate the nondiscriminatory reasons that her employer may proffer. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–14 (2002). But, taken collectively, "the inferences of discrimination drawn by the plaintiff" must be "reasonable and plausibly supported."

*Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017); *see Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025) ("[A] plaintiff must plead facts sufficient to allow a plausible inference that the challenged action was taken because of his race.").

Bastian has failed to state a claim of discrimination on the basis of race or national origin because she has not offered direct evidence of discrimination, and she has not pleaded sufficient facts to support an inference of discrimination. She has alleged three adverse employment actions: (1) placement on a PIP; (2) exclusion from meetings, trainings, and resources; and (3) termination. *See* Am. Compl. ¶¶ 16–17, 19; Pl.'s Opp'n 4, 9–10, Dkt. 22. Even assuming that each of these actions constitutes an adverse employment action for the purposes of Title VII, *but see Truesdale v. District of Columbia*, No. 21-cv-315, 2023 WL 387571, at *3 (D.D.C. Jan. 25, 2023) (placing an employee on a PIP "fall[s] into the category of a supervisor's ordinary workplace exercise of authority" and "do[es] not adversely affect the conditions of a plaintiff's employment" (citation modified)), Bastian has not pleaded any facts from which the Court can infer a causal connection between the actions and her protected characteristics. For example, while Bastian points to allegedly discriminatory comments made by Noll and Society employees, *see* Am. Compl. ¶ 18, she does not allege that any of those individuals were involved in the adverse employment actions she identifies, *see Aliotta v. Bair*, 614 F.3d 556, 570 n.6 (D.C. Cir. 2010) ("[S]tray remarks of nondecisionmakers are not sufficient, standing alone, to raise an inference of discrimination." (citation modified)); *Bilal v. Metro. Police Dep't*, No. 25-cv-189, 2025 WL 1917959, at *4 (D.D.C. July 11, 2025) (alleged "racially charged comments," though "concerning," did not give rise to inference of discrimination where plaintiff failed to link the comments to the adverse employment actions). Nor does Bastian allege that those who were involved considered her protected characteristics in any way. While she asserts that Lott "harassed" her for using her personal

vehicle, *see* Pl.'s Exs. 16–17, and "treated [her] with visible disdain," Pl.'s Opp'n 5, she does not allege any facts connecting that treatment to a protected characteristic, *cf. Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (holding that, although two complaints "recount[ing] several instances of rude emails, name-calling, lost tempers and unprofessional behavior" that defendant "failed to investigate or remediate . . . paint[ed] an unpleasant picture," they did not allege that defendant "ha[d] done anything *illegal*"). And although Bastian asserts that "similarly situated employees" were not subject to comparable adverse employment actions, Am. Compl. ¶ 16; *see id.* ¶¶ 16–17; Pl.'s Opp'n 10, she does not alleged facts from which the Court can infer that other employees were in fact similarly situated, *see Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021) ("[A] plaintiff's assertion that . . . she is similarly situated to others is just a legal conclusion[,] and a legal conclusion is never enough to state a claim." (citation modified)).

Because the Amended Complaint offers only conclusory allegations of discrimination insufficient to state a claim for relief, *see Iqbal*, 556 U.S. at 678, the Court will dismiss Bastian's claims for discrimination on the basis of race and national origin for failure to state a claim.

### B.    Title VII Retaliation Claim

Bastian further alleges that the Society engaged in retaliation—in the form of the PIP; exclusion from meetings, trainings, and resources; her ultimate termination; and negative employment references—in violation of Title VII after she reported unsafe work conditions and harassment. Am. Compl. ¶¶ 16–17, 21.

The standard that governs retaliation claims echoes that for discrimination claims. Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee who (1) "has opposed any practice made an unlawful employment practice by [Title VII]"; or

(2) "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).  To state a retaliation claim, a plaintiff must allege that (1) "she engaged in statutorily protected activity"; (2) "she suffered a materially adverse action by her employer"; and (3) "the two are causally connected."  *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024) (citation modified).  As relevant here, "[n]ot every complaint garners its author protection under Title VII."  *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).  "While no magic words are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition."  *Id.* (citation modified); *see also id.* (expressing doubt that employee memo constituted protected activity where memo complained of "embarrassing, humiliating, and downright insulting" behavior and "incidentally mention[ed] [the employee's] previous [sexual harassment] lawsuit" but did not explicitly allege discrimination).

Bastian has not alleged facts suggesting that she engaged in statutorily protected activity. Her Amended Complaint states that she faced retaliatory acts after she "reported unsafe work conditions and harassment" to supervisors.  Am. Compl. ¶ 16.  But it does not allege that she "opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a).  Indeed, Bastian has not offered *any* details regarding the content of her complaints, alleging only that she reported "harassment" and "requested a safe work environment."  Pl.'s Exs. 13; *see also id.* at 19 ("Plaintiff detailed the harassment by Jason Noll during the Bike MS Ride and provided the contact details of a witness."); Am. Compl. ¶ 16 ("After Plaintiff reported unsafe work conditions and harassment, Defendant retaliated."); Pl.'s Opp'n 8 ("[Bastian] made formal complaints to Human Resources . . . about harassment and a hostile work environment.").  At present, Bastian's allegations suggest that she made no more than "ambiguous complaints that

10

d[id] not make the employer aware of alleged discriminatory misconduct" and "d[id] not constitute protected activity." *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 128 (D.D.C. 2015) (citation modified).

Because Bastian has not adequately alleged that she engaged in any statutorily protected activity, she has failed to plead a retaliation claim.[1]

### C.    Hostile Work Environment Claim

Although Bastian frames her claims for relief as "Discrimination under Title VII," "Retaliation under Title VII," and "Violation of 42 U.S.C. § 1981," Am. Compl. ¶¶ 23–25, her Amended Complaint, broadly construed, could be read to also assert a hostile work environment claim under Title VII, *see, e.g.*, *id.* ¶ 9; *see also* Pl.'s Opp'n 8 (referencing a "federal clai[m] for hostile work environment").

To prevail on a hostile work environment claim, a plaintiff must show that her employer "subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The hostility standard is "sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation

---

[1] In a timeline attached to her Amended Complaint, Bastian alleges that she faced "retaliatory punishment" for "speaking up about the Targeted Bias-Related Federal Crimes committed against [her] by Jason Noll." Pl.'s Exs. 15; *see id.* at 16 ("Told I would be Force [*sic*] to work with Jason Noll again despite Target [*sic*] Bias-Related Crimes.").  Even assuming that these allegations characterize the content of Bastian's complaints to supervisors, rather than describe how Bastian views Noll's actions, they fall short of adequately alleging protected activity.  "Mere use of the word 'bias' in the absence of an explanation of whether this bias constitutes discrimination in violation of Title VII is akin to the bare use of the word 'discrimination[,]' which without any discussion of a protected basis is insufficient to create protected activity." *Gibbs v. Wash. Metro. Area Transit Auth.*, 48 F. Supp. 3d 110, 133 (D.D.C. 2014).

modified).  Thus, sporadic incidents of rude or unprofessional behavior are insufficient to establish an environment of "severe or pervasive" hostility.  *Barbour v. Browner*, 181 F.3d 1342, 1348–49 (D.C. Cir. 1999).  And plaintiffs cannot "bootstrap their alleged discrete acts of retaliation [or disparate treatment] into a broader hostile work environment claim."  *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom.*, *Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008); *see Hampton v. Vilsack*, 760 F. Supp. 2d 38, 57 (D.D.C. 2011) ("Plaintiff cannot . . . rely on the discrete acts upon which he bases his discrimination and retaliation claims to support a hostile work environment claim."), *aff'd*, 685 F.3d 1096 (D.C. Cir. 2012).

Bastian has not pleaded a plausible hostile work environment claim.  Her allegations that (1) Society employees and Noll made a handful of discriminatory comments, Am. Compl. ¶¶ 9, 16–18; (2) Noll "harassed [her] by threatening her with a forklift [and] attempting to contaminate her drink while infected with COVID 19," *id.* ¶ 9; (3) Lott "treated [her] with visible disdain," Pl.'s Opp'n 5, and subjected her to "unwarranted reprimands," Am. Compl. ¶ 9; and (4) supervisors instructed her to take responsibility for a rental car and failed to take sufficient action to address her issues with Noll, *see id.*; Pl.'s Exs. 29–34, fall short of the "extreme" misconduct that makes a workplace hostile, *Faragher*, 524 U.S. at 788; *see Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54–55 (D.D.C. 2004) (finding no hostile work environment where plaintiff was "humiliated" at meetings, screamed at once, told to "shut up and sit down," and subjected to "constantly hostile and hypercritical" management); *Akonji v. Unity Healthcare, Inc.*, 517 F. Supp. 2d 83, 97–98 (D.D.C. 2007) ("five discrete acts over [a] two-year period"— including touching plaintiff's buttocks and attempting to kiss plaintiff—and "infrequent inappropriate comments" were not "sufficiently severe or pervasive").  And, in any event, Bastian cannot "bootstrap" the discriminatory and retaliatory incidents she alleges "into a broader hostile

12

work environment claim." *Baloch*, 517 F. Supp. 2d at 364; *see Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) ("Cobbling together a number of distinct, disparate acts will not create a hostile work environment, because discrete acts constituting discrimination or retaliation claims are different in kind from a hostile work environment claim." (citation modified)).  As such, the Court will dismiss Bastian's hostile work environment claim for failure to state a claim.

D.      **Section 1981 Claims**

Finally, Bastian argues that the Society discriminated and retaliated against her in violation of 42 U.S.C. § 1981.  *See* Am. Compl. ¶ 25; Pl.'s Opp'n 15–17.

Section 1981 "protects the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006) (quoting 42 U.S.C. § 1981(a)).  Accordingly, the statute "prohibits private employers from intentionally discriminating on the basis of race with respect to the 'benefits, privileges, terms, and conditions' of employment."  *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (quoting 42 U.S.C. § 1981(b)).  Although § 1981 and Title VII "differ in certain respects," *see id.* at 576 n.1 ("Section 1981 covers discrimination on the basis of race, whereas Title VII covers discrimination on the basis of race, gender, pregnancy, national origin, and religion."), courts evaluate § 1981 discrimination and retaliation claims using the same frameworks employed in the Title VII context, *see Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017); *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010).

Bastian's § 1981 claims fail for the reasons already stated.  She has failed to state a claim of discrimination because she has not pleaded any facts from which the Court can infer a causal connection between the adverse employment actions she has identified and her race, and she has

13

failed to state a claim of retaliation because she has not alleged facts suggesting that she engaged in statutorily protected activity.  Accordingly, the Court will dismiss Bastian's § 1981 claims.

CONCLUSION

For the foregoing reasons, the defendant's Motion to Dismiss the Amended Complaint, Dkt. 19, is **GRANTED**.  The plaintiff's claims against the defendant are **DISMISSED WITHOUT PREJUDICE**.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 30, 2026